May it please the Court, Paul Utrecht on behalf of Appellants. What do you think about when a judge asks a question before you can say anything? It's happened before, Your Honor. It won't be the first time. I share with you this concern. I'm trying to find where we have jurisdiction, and I'm just wondering whether you can point to me where in your complaint there's a sufficient allegation that, in fact, we have jurisdiction to handle this matter. The complaint alleges that this is a First Amendment violation. Well, that's okay, but don't you need something a little bit specific? Well, I think that you're alleging injury, in fact, and delusion, and there's a whole series of Supreme Court cases that tell you you need something more than just come to court and say, you know, we want to have a declaratory judgment to decide that this particular statute is unconstitutional. Don't you need something more than that? Your Honor, that issue was not raised in the trial court. It was not raised. I understand that, but don't you think we have a sua sponte responsibility to raise jurisdictional issues, even though if it hasn't been raised by any party below? I think that that jurisdictional issue could be addressed either by briefs or by a request for an amendment to the complaint, because I think there was, in fact, injury in fact here. I think both of the plaintiffs here had their First Amendment rights chilled by the complaint.  But I'm just looking at the record that we have, and if you can point to something I haven't found in your complaint that satisfies my jurisdictional curiosities, I'd be grateful. Your Honor, I did not read the complaint for the purpose of determining this issue. And so I could sit down and read it. In fact, I probably should save three minutes for rebuttal so that I can take it. You're kind of being sandbagged here. Well, I'm not complaining that I'm being sandbagged. I mean, I just can't – I haven't read the complaint for this purpose. I do know that, in fact, there are facts that would support an injury in fact. Well, I look through it all. I'm not trying to be cute here, but I think we have to look at our jurisdiction here, and I want to give you every opportunity to deal with the issue, because I'm concerned about it. The point that I wanted to make was not that I was sure that it was in the complaint. I was sure that, in fact, that happened, and therefore the complaint could be amended to make those. Could be amended. But that would have to be for the lower court to do, I guess, not us, right? I think that's correct. We might have to make an offer of proof as to what those allegations were in order to satisfy the court, and I would ask, if you want me to do that, that I get a chance to do that in writing so that I can make sure that my factual statements are, in fact, supported by the clients. Do you know whether Fagone – is that the way you say his name? Fagone. Fagone, sorry. Her name, Your Honor. Do you know whether Fagone offered the subtenant money to vacate? I believe that the – that she was sued for that reason. Well, I don't have anything in – anything that's in the allegations in the complaint to say that. All I have is she was sued claiming communications regarding her status, threats to invoke the legal process, her subsequent lawsuit itself, and her refusal to accept his rent. I – That's all I have. I understand – I understand there may – I'm not saying that there isn't a defect in the complaint's allegations. What I'm saying is that we were not challenged on this ground in the trial court. Had we been challenged in the trial court on this ground, I'm sure that we would have been able to amend it. Let me share this with you. It happens, you know, that I remember I learned my lesson the hard way years ago when I was, you know, Judge Smith's age. I wrote a wonderful decision on the merits. It was 64-and-a-half pages long, and I had to ecrow with the one-paragraph reversal from the circuit court because we never considered jurisdiction. And I learned my lesson, and I told all my clerks, first thing, think about jurisdiction. We have that obligation. Well, I think that the trial court had jurisdiction. The question of whether we alleged all of the elements of our – How can they get jurisdiction without alleging it? The – this defect – I mean, we don't get it. We don't cure defects by suggesting, well, it may have happened. The court either gets allegations upon which it can act or it doesn't. Well, the court got a complaint that alleged a First Amendment violation. No one challenged that there was a standing allegation in the complaint. No one challenged it. I'm not questioning that. And without that challenge, we didn't either brief the issue for this Court, brief And I think that at a minimum, we can make an offer of proof to us. If you go back and you can flush this out in lower court and, you know, you may be able to amend and you may be able to satisfy standing, but I'm just sharing with you the problem that we have here as a circuit court. I understand that that's a problem, and I – as I said, I think that it can be addressed. It may not be something that I can address this morning without consulting with the clients about exactly what happened to them. So I think that that's not the – I guess that should not stop this Court from deciding the appeal, because I think that with our offer of proof that the complaint could be amended to satisfy standing. I don't know that we can reach the substantive issues, though, if we don't have jurisdiction. I just don't know how we can do that. Well, I – my understanding is that this Court has jurisdiction to review the trial court's decision, and it can either affirm or reverse, and it can reverse – it can avoid the question and – Standing, subject matter jurisdiction? I don't think we can get beyond that. I mean, I may want to do that. I may be curious about your case. It may be interesting. But I just don't see a roadmap here where I can deal with it. I mean, I invite your thoughts on it, but I'm just sharing with you my concern. My thoughts would be better if I had a chance to research the question, Your Honor. We'll let you know what we think about all that in due course, I'm sure. Let me move to another question, simply because that first question is quite important to me, but one other question that I think we need to think about, and that is your overbreadth arguments. I guess I'm wondering how in the devil that I can review a facial challenge on an overbreadth review. I think it's a commercial transaction or commercial speech. Well, there's actually a couple different questions in there. The first is we don't believe that it's commercial speech. The second – Well, okay, you got past that. Let's go on. I mean, the biggest problem that I have in this overbreadth is on one side, I don't have anything that suggests anything than a general idea about what people do. I don't have any injury. I don't have any nothing. And now, on the second verse, I have a commercial transaction, which I don't think can be an overbreadth review. Well, even under the central Hudson test, there has to be a reasonable fit between the prohibition and the problem. And I think that you get into the overbreadth problem because here the city argued that what they're trying to stop are strong-arm tactics. And if the only thing that the ordinance stopped were threats of violence, true threats in the words of the case law, then there wouldn't be a problem. But the city intended and admits that it intended to include prohibitions on other kinds of threats, and that then leads people to face criminal sanctions for speaking to their tenants about the question of whether the tenant will leave or not. That's the problem. That's another problem in addition to the headache I already gave you. Are we really talking about speech at all here? Isn't this really regulating conduct and not speech? It is. Offers to pay the tenant money are not conduct. Those are not presented as commercial transactions. We're talking particularly about our clients. We're talking about people who own two- to four-unit buildings. They live in the building with their tenants. They go knock on the neighbor's door and say, I am tired of living in the same building with you. You have created nuisances. You have created problems for me. I want you to leave. I want to pay you some money to leave. And the city says that the landlord has now committed a crime by doing that. And that, I think, is the problem here. The city lumps together the person who's living next door to the tenant, who's sick and tired of being there and wants the tenant to leave, and threatens the tenant with an eviction or threatens the tenant with whatever he threatens him with. Here's what the Supreme Court said in Orlick back in 1978. It has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced or carried out by means of language, either spoken, written or printed. Don't you think that's apt in this case? Well, I think the problem is they're not talking purely about the actual offer itself. They're talking about the words around the offer, because it's not the offer by itself that's prohibited. It's the offer with threats or intimidation made in bad faith. So that means there's going to be some words used to convey those threats. That's what the ordinance is getting at. And so the fact that the words are concerning a payment arrangement doesn't change the fact that it's the words around the payment arrangement that are being prohibited. But ultimately, do you think your best argument is the vagueness due process argument when push comes to shove? Well, I think there's no question that it's vague. I think there's no question that a landlord does not know what the landlord is allowed to say to the tenant regarding buyout offers, and that then leads to criminal liability for the landlord. I think there's no question that it's vague and unconstitutional simply for vagueness. Bad faith? I mean, do you know of any case where the Court has said that bad faith is not an appropriate constitutional standard? Bad faith by itself doesn't answer our question, because it's bad faith about what? Well, that's part of the problem with your jurisdictional issue. I don't know about what you're complaining about. Do you plan to, you know, threaten somebody here or intimidate somebody? Well, what the clients intend to do is they intend to go to their tenants and say to their tenants they want them to leave and they want them to pay money, and if they don't leave, they are going to terminate their tenancy, file an unlawful detainer action against them, take steps against the tenant, and they would rather pay the tenant to leave rather than take those steps. You may think about which one of those facets you want to reflect upon when you try to resolve your jurisdictional problem, but go ahead. Those are threats. Those are, in the common vernacular, those are threats. Those are not true threats under the First Amendment law. Under the First Amendment law, to be a true threat, it has to be a threat of violence. And the city talks about threats of violence, but it has thrown together threats of violence with threats of litigation, with threats of other perfectly legal conduct that the landlord is allowed to engage in. You don't have an as-applied challenge here. You have a facial challenge. And don't you have some problems in terms of applying, you know, a proper standard here to deal with that in the vagueness issue? Well, I think the vagueness issue is clear on the face of the statute. And I think that the overbreadth of it is also clear on the statute.  What do you think the constitutional standard is today in the Ninth Circuit, let alone in the Supreme Court, in terms of assessing what constitutes vagueness? What's the proper standard, in your opinion? If a reasonable person would not understand what is prohibited, that makes it vague. I think in the criminal context, that's what we're looking at here. Well, if in fact that is the standard, how in the devil can I suggest that this is bad faith and or threats and intimidation that is vague if Hill v. Colorado isn't vague? I mean, Hill v. Colorado had the same kind of stuff. And the Supreme Court said that's not vague. Well, the Supreme Court also in the Edward J. DiBartolo case said that when we're talking about pamphlets, those kind of words are vague. So we're not talking about pamphlets. We're talking about bad faith, threats or intimidation, and whether a people of ordinary intelligence wouldn't understand what that means. Hill v. Colorado specifically speaks to that kind of stuff and says it isn't vague. If threats and intimidation meant true threats, meant threats of violence, I don't think there's any question about it. But I think this particular ordinance, the city admits that it intended to prohibit things that were not true threats. And I think when we move out of the true threat box, then we're talking about something where it is vague on its face and it is overbroad on its face, and you don't need to get to the actual specific cases in order to decide that. I'd like to save my last minute and a half for rebuttal if that's possible. Okay, thank you. Good morning, Your Honors. I wanted to ask you a question before you start to speak also, so I can't be accused of discrimination. About our jurisdiction, did you ever think about raising that issue below? Well, to be honest, Your Honor, now that you're asking me, I wish I had. But it was not an issue that did come up below. And if memory serves, as you've noted, there aren't allegations in the complaint to suggest that the only person who's on the other side here actually does intend to do any of the things prohibited by Proposition M. So as you've noted, a standing is a defect that can be challenged at any time, regardless of whether we raised it below, and so it's properly before this Court. Given your answer there, you got a lot of other arguments you need to give us here? No, Your Honor. I'm prepared to submit it, unless there are any other questions. I don't want to cut you off, but if you have any response to give to what arguments he's given or... Well, I would just say that counsel, in his briefs and in the argument to this Court, consistently misrepresents the scope of Provision M. He suggests that it applies, that the city intends to regulate mere communications to a tenant about being hit. I think we understand that. But you also made another concession here, that this is speech. I mean, do you think it's that clear cut that we're dealing with speech here? No, Your Honor. What we've said is that Proposition M addresses the manner of interactions with a tenant. That's what we're getting at. We're getting at threats and intimidation. Whether that's conveyed by – it can be conveyed by speech in some cases, but most commonly it's conveyed – or the examples that we have on the record are situations where a landlord sends armed goons to someone's door, or they act in an intimidating manner or in a threatening manner to a tenant that, you know, that is intimidating to a reasonable person, and they do so in bad faith. And that's what the city is getting at here. They're getting at bad faith threats and intimidation to tenants that cause them to vacate rental units and that subvert the purposes of the city's rent ordinance. So if there are – but I'm happy to take any questions from the panel. If there are none, I'm prepared to submit. Thank you. Thank you. Case 09-17151. Did you have other – did he have further time? He did? Do you want to add more? I didn't know you had further time. Sorry. I'll take a few minutes. I think all I'd like to say is that if the city's position is that only threats of violence and intimidation that leads to an expectation of violence, then I don't think we would be claiming that there was a First Amendment violation here. I believe the city's ordinance pursuant to their briefs and as intended by them includes threats of other sorts, threats which are, in fact, protected by the First  So on that point, I'll submit. Thank you. All right. Case 09-17151 is submitted.
judges: Block, Noonan, Smith N. R.